E-FILED
Tuesday, 30 July, 2024  12:36:17 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, URBANA DIVISION

Alyson Stephenson,

          Plaintiff,

v.

Champaign Community Unit School District #4,

          Defendant.

Case No. 23 cv 02081

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NOW COMES, Champaign Community Unit School District #4 ("the District"), and in support of its Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56, states as follows:

### INTRODUCTION

Alyson Stephenson ("Stephenson") asserts claims against her former employer, the District, for race and gender discrimination as well as retaliation under Title VII of the Civil Rights Act. Stepheson is a Caucasian female. She alleges that she was discriminated against and retaliated against by her supervisors. The undisputed facts and Stephenson's admissions establish that her claims fail as a matter of law. Fatal to each of her claims is the undisputed fact that she was not subject to any adverse action. Additionally, Stephenson cannot establish that any similarly situated employee was treated more favorably and the alleged discriminatory actions (which amount to isolated comments and petty slights) have no relation to her race or gender, nor do they support her claim of a hostile work environment. Thus, the District respectfully asks this Court to grant its motion for summary judgment.

### STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

1.      Stephenson is a Caucasian female who was formerly employed with the District from August 17, 2015 to July 9, 2020. Compl. at ¶¶ 6, 8, 15.

---

[1] Defendant concedes the truth of these statements only for purposes of its Motion for Summary Judgment.

2.      Stephenson was hired as a full-time certified teacher and, at all times, she was assigned to work as a fifth-grade teacher at Bottenfield Elementary School. Compl. at ¶ 8; Stephenson Deposition Transcript ("Ex. A"), 16:20-17:17; Stephenson Deposition Exhibit ("Dep. Ex.") 2. Stephenson received tenure on August 19, 2019. Compl. at ¶ 8; Ex. A, 27:22-28:10.

3.      During the 2019-2020 school year, Stephenson's supervisors were Assistant Principal Renayee Westfield (African American, Female) and Principal Jason Pope (Caucasian, Male). Ex. A, 21:22-22:12, 62:15-63:2.

4.      Stephenson generally got along with her colleagues at work and there was no one that she did not get along with. Ex. A, 22:16-23:4.

5.      Stephenson received positive performance reviews of "proficient," or "excellent," which included those completed by Westfield and Pope. Ex. A, 23:5-20.

6.      Stephenson was never disciplined. Ex. A, 23:23-24:1.

7.      Stephenson was aware of the District's policies prohibiting discrimination, harassment and retaliation and received annual training. Ex. A, 78:22-79:18; Dep. Ex. 12.

8.      During her employment, Stephenson was represented by the Champaign Federation of Teachers and was subject to a collective bargaining agreement, which contains a nondiscrimination provision and grievance policy. Ex. A, 24:2-9, 79:18-80:12; Dep. Ex. 13, p. 2-4, 9.

9.      In June 2019, Stephenson flew to Dallas, Texas for a work conference. Ex. A, 31:13-32:6. While at the Champaign airport, two or three black female administrators, including Westfield, assisted Stephenson with her bags and were kind and friendly. Ex. A, 31:13-32:6. When they arrived at the Dallas Airport, they told Stephenson that they had coordinated their own ride to the hotel and they would see her there. Ex. A, 31:13-32:6, 34:13-36:8. As a result, Stephenson had

to find her own ride to the hotel with her six-week-old child whom she chose to bring on the trip with her as well as her mother-in-law. Ex. A, 31:13-32:6, 34:13-36:8.

10.    Westfield texted Stephenson within a group chat to check in with her, and Stephenson was able to get to the hotel safely. Ex. A, 36:9-37:1; Dep Ex. 4. Other teachers were also on the trip, including Andrew McDaniel and Nick Ponder, and similarly found their own rides to the hotel upon landing at the Dallas airport. Ex. A, 35:6-37:1; Dep Ex. 4.

11.    In Fall of 2019, during an internal AVID[2] meeting, Westfield said that only Nick Ponder and Andrew McDaniel can handle difficult students. Ex. A, 37:3-38:18. Stephenson interpreted this as implying that she was not able to handle difficult students; however, Westfield never said that Stephenson could not handle difficult students. Ex. A, 38:19-39:2.

12.    In Fall of 2019, Westfield told Andrew McDaniel that he was "white but not white" Ex. A, 32:7-10; 39:3-40:14.

13.    Westfield made an "unprofessional" comment when she told Stephenson to distance herself from her teammates and to watch whom she associated with. Ex. A, 32:11-15, 40:15-22. This statement occurred after they had discussed a student behavior issue in which students were anonymously emailing teachers, including Stephenson and Andrew McDaniel. Ex. A, 41:1-43:18. Westfield believed that it was a staff member sending those emails posing as a student and that Stephenson should watch whom she is associating with. Ex. A, 41:1-43:18.

14.    In Fall of 2019, Westfield said that the District needed more black teachers in the context of a student behavior situation. Ex. A, 33:9-13, 56:19-58:19.  Stephenson agreed with this statement. Ex. A, 33:9-13, 56:19-58:19. Westfield did not state that Stepheson did not handle the student situation correctly. Ex. A, 33:9-13, 56:19-58:19.

---

[2] AVID is a college and career readiness program that provides skills and strategies to students who need support. Ex. A, 38:6-18.

15.     In the Fall of 2019, the faculty held a meeting to review the test scores of students, which reflected that the students were doing well in math and reading. Ex. A, 58:20-60:11. Westfield made a comment to the effect of: I wouldn't be surprised if some of you had just walked out of a KKK meeting, but your test scores don't reflect that. So what you do on your free time is none of my business. Ex. A, 58:20-60:11. The statement was directed at staff as a whole and no one in particular. Ex. A, 58:20-60:11.

16.     In January 2020, Principal Pope brought a new teacher aide into the building, Mr. Smith, and introduced him to staff. Ex. A, 60:12-62:22. Pope skipped over Stephenson when making introductions. Ex. A, 60:12-62:22. Each of the individuals that Pope introduced to Smith were Caucasian females. Ex. A, 60:12-63:13.

17.     When Stephenson asked Pope why he did not introduce her, Pope apologized, expressed how much he valued her as a teacher, and Stephenson accepted that apology. Ex. A, 63:14-24; Dep Ex. 7. Pope thereafter introduced them. Ex. A, Dep Ex. 7.

18.     On February 27, 2020, during a committee meeting to discuss behavioral interventions for three students, Westfield read out loud from an article relating to a picture depicting equality verses equity. Compl. at ¶ 10j; Ex. A, 43:19-45:16, 71:21-73:18. Stephenson asserts that the article indicated the picture was an example of white supremacy. Ex. A, 43:19-45:16.  Prior to this meeting occurring, Stephenson had posted that same picture in an email she sent to Westfield. Ex. A, 44:23-45:6. Westfield never stated that Stephenson, or anyone, was a white supremacist. Ex. A, 73:17-18.

19.     On March 10, 2020, Stephenson called the office stating that she needed assistance with a student who was cussing and yelling at another student. Compl. at ¶ 10(l). Ex A, 45:24-49:7. The school nurse was sent to assist Stephenson. Ex. A, 49:5-7.

20.     Prior to this March 10, 2020 student issue happening, Stephenson had requested that Pope require another adult be present when Westfield would have one-on-one conversations with students in her classroom.  Ex. A, 47:4 -48:9, 53:7-11. Stephenson indicates that this request was misinterpreted by Westfield to mean that she should not go to Stephenson's classroom unless another adult was present, which is why Westfield did not personally respond to Stephenson's call for assistance and sent the school nurse instead. Ex. A, 47:4-48:9.

21.     On March 6, 2020, Stephenson and her colleague Kerri Schmitt met with Principal Pope and stated that Bottenfield was a very uncomfortable place to work. Ex. A, 50:4- 52:2. On March 11, 2020, there was a follow up meeting to address Stephenson and Schmitt's concerns and discuss a way of moving forward. Ex. A, 53:19-54:22. Westfield, Pope and Orlando Thomas (Executive Director of School Supports and Student Assignment) were present at that meeting, as well as Stephenson, Schmitt and two union representatives. Ex. A, 53:19-54:22.

22.     Stephenson, along with others, complained to the Union about the environment at Bottenfield and there was an internal meeting to discuss. Ex. A, 24:17-27:19, 81:12-82:9. No one from District administration was present at that meeting. Ex. A, 27:12-19.

23.     Stephenson never submitted a complaint to Human Resources regarding any alleged discrimination, harassment or retaliation. Ex. A, 81:2-7.

24.     Stephenson never filed a grievance. Ex. A, 24:10-14, 81:12-16.

25.     In Spring of 2020, Pope reached out to Stephenson stating that Megan Herrig (a first -grade teacher) wanted to move to fifth grade and that he thought she would make a great first grade teacher. Ex. A, 64:9-19. Stephenson indicated that she did not want to teach first grade. Ex. A, 65:4-6.

26.     Stephenson was never assigned to the first-grade position and on May 20, 2020, Stephenson received her tentative assignment for the 2020-2021 school year as a fifth-grade teacher. Ex. A, 70:1-71:11; Dep. Ex. 11.

27.     Stephenson claims that the above incidents were discriminatory based on her status as a Caucasian female teacher and that her male counterparts, Andrew McDaniel and Nick Ponder, who are both Caucasian males, were treated more favorably.  Ex. A, 33:6-34:12. Stephenson asserts that they were treated differently because they were more vocal and commanding of the room. Ex. A, 33:6-34:12.

28.     There were no African American teachers at Bottenfield during June 2019 – May 2020; thus, no African American teacher was treated more favorably than Stephenson. Ex. A, 73:24-74:6.

29.     In May 2020, Stephenson applied for a job with Little Hearts and Hands, a private school, and she accepted an offer of employment as a full-time second grade teacher on July 8, 2020. Ex. A, 13:1-22, 83:2-10; Plaintiff's Interrogatory Responses ("Ex. B"), No. 7.

30.     Thereafter, on July 9, 2020, Stephenson voluntarily resigned from her employment with the District. Ex. A, 82:19-83:10; Dep Ex. 14. The District did not terminate Stephenson's employment. Ex. A, 82:19-21; Dep Ex. 14.

31.     Stephenson worked at Little Hearts and Hands Academy for one school year. Ex. A, 13:6-22. Thereafter, Stephenson voluntarily left her employment and has maintained continued full-time employment at all times. Ex. A, 12:10-16:11.

**LEGAL STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P.

56(a). To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. Summary judgment is the "put up or shut up" moment in a lawsuit "when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007). Speculation and self-interested assertions are insufficient. *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989).

## ARGUMENT

**A. Stephenson Cannot Meet the High Burden Imposed for Reverse Discrimination Claims Nor Can She Establish That She Was Subject to an Adverse Employment Action Or That Similarly Situated Teachers Were Treated More Favorably Based on Race.**

To establish a reverse race discrimination claim, Stephenson must prove: (1) "background circumstances" establishing that the District has reason or inclination to discriminate invidiously against white employees or evidence that there are "fishy" circumstances; (2) she met the District's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly-situated non-class members were treated more favorably. *Henry v. Jones*, 507 F.3d 558, 564 (7th Cir. 2007). The Seventh Circuit has adopted this test "because it is the unusual employer who discriminates against majority employees. *McMahon v. Dunlap Comm. Unit S.D. No. 323*, 274 F.Supp.3d 836, 844 (C.D. Ill. 2017).

Stephenson cannot satisfy the first, third or fourth elements of her claim. First, Stephenson cannot establish the required "background circumstances." Stephenson has not alleged any facts to support a claim that the District discriminates invidiously against white employees. Pope is Caucasian and Westfield is African American. SUF ¶ 3. Courts have held that the predominance

of minority supervisors, standing alone, does not establish a "background circumstance," and having one African American supervisor would certainly not suffice in this case. *See Lupescu v. Napolitano*, 700 F.Supp.2d 962, 974 (N.D. Ill. 2010).

Second, Stephenson did not suffer an adverse employment action. Stephenson claims she was treated unfavorably by her supervisors Principal Pope and Assistant Principal Westfield because Pope did not initially introduce her to a new colleague and because he asked her about teaching first grade. Her complaints against Westfield include that she did not offer to get Stephenson a ride from the airport to her hotel during a work conference; made comments related to race largely in the context of discussing student-related issues; read aloud from an article regarding a picture depicting equality verse equity; told Stephenson to watch who she associated with based on anonymous emails she was receiving; and did not respond to her request for assistance personally, sending the school nurse instead.

None of these complaints arise to the level of an adverse employment action. Stephenson received favorable evaluations. SUF ¶ 5. She was not disciplined. SUF ¶ 6. At all times, Stephenson was assigned to be a fifth-grade teacher, in accordance with her preference, and maintained the same job duties and responsibilities. SUF ¶¶ 2, 26. Stephenson resigned from her employment voluntarily after she received an offer for a job she applied for. SUF ¶¶ 26-27, 30-31. Thus, under the standard articulated in the U.S. Supreme Court's recent decision *Muldrow v. City of St. Louis*, Stephenson cannot establish that she experienced "some harm" or that she was "worse off" in any way. *Muldrow v. City of St. Louis, Missouri*, 601 U.S. ___, 144 S. Ct. 967 (2024). Indeed, "not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that an employee did not like would form the basis of a discrimination suit." *Porter v. City of Chicago*, 700 F.3d 944, 954 (7th Cir. 2012); *Thompson v.*

*Mem'l Hosp. of Carbondale*, 625 F.3d 394, 406 (7th Cir. 2010) (the statute "is not intended to reach every bigoted act or gesture that a worker might encounter in the workplace.").

Third, Stephenson cannot establish that similarly situated non-class members were treated more favorably or there is a connection between the conduct of which she complains and her race. Pope introduced the new staff member, Mr. Smith, to other white staff members, so his failure to initially introduce Stephenson was not because of her race. SUF ¶¶ 16-17. Likewise, Westfield did not offer Ponder or McDaniel, both of whom are white, a ride from the airport either; and her comment about the KKK was directed at multiple, white staff members. SUF ¶¶ 9-10, 15. There were no African American teachers at the school during the relevant time frame, so Stephenson cannot show non-class members were treated more favorably. SUF ¶ 28.

Stephenson's reverse race discrimination claim fails.

### B. Stephenson Cannot Succeed on Her Gender Discrimination Claim Because She Was Not Subject to an Adverse Action And She Fails to Provide Evidence that Her Alleged Comparators Were Treated More Favorably.

The Seventh Circuit no longer separates out direct and indirect methods of proof for discrimination claims. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Instead, to survive summary judgment, a plaintiff must present evidence that "would permit a reasonable factfinder to conclude that plaintiff's [gender] caused the adverse employment action." *Id.* Nevertheless, the *McDonnell Douglas* burden shifting framework remains a valid approach for organizing and assessing evidence of discrimination. *Id.* at 766. Thus, Stephenson must show that: (1) she is a member of a protected class; (2) she was meeting the District's legitimate expectations; (3) she suffered an adverse employment action; and (4) the District treated similarly-situated employees more favorably than her. *Johnson v. Advocate Health and Hospitals Corp.*, 892 F.3d 887, 895 (7th Cir. 2018). If Stephenson meets this standard, the burden shifts to the District to

articulate a legitimate, non-discriminatory reason for taking action and if it does so, Stephenson must establish pretext. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006).

Stephenson's gender discrimination claim fails for the same reasons set forth above; mainly, she was not subject to an adverse employment action, nor is she able to establish that McDaniel or Ponder were treated more favorably. Stephenson has failed to establish any facts to indicate that Pope treated McDaniel or Ponder more favorably at all, let alone based on their gender. Stephenson relies on a single comment in which Westfield said that Ponder and McDaniel can handle difficult students. Westfield never indicated that Stephenson could not handle difficult students. SUF ¶ 11. Further, when asked why Stephenson believed that these individuals were treated more favorably, she testified they were more vocal and commanding of the room, not based on any perceived preference for males. SUF ¶ 27. Nevertheless, one ambiguous comment is insufficient to establish a discrimination claim. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (offhanded comments and isolated incidents will not amount to discrimination).

### C. Stephenson Cannot Establish That She was Subject to A Hostile Work Environment And There Is No Basis for Employer Liability.

In support of a hostile work environment claim, Stephenson must show: (1) her work environment was both objectively and subjectively offensive; (2) the harassment complained of was based on her race or gender; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability. *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009). The alleged conduct must be sufficiently severe or pervasive to alter the conditions of employment such that it creates an abusive working environment. *Id.* Factors include "the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance." *Id.*

Offhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment. *Id.* at 840-41.

As an initial matter, many of the incidents that Stephenson complains of are unrelated to race or gender. *See Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 863 (7th Cir. 2005) (the alleged harassment must be sufficiently connected to race [or gender] before it may reasonably be construed as being motivated by the defendant's hostility). Any comments that arguably were related to race or gender were either not directed at Stephenson or were in the context of discussing student issues, rather than targeting Stephenson based on race or gender. SUF ¶ 11, 12, 15. Indeed, Stephenson admits that Westfield did not direct her allegedly discriminatory comments towards her. SUF ¶ 12, 15, 18. In one instance, Stephenson agreed that the District needed more black teachers in alignment with Westfield's alleged comment. SUF ¶ 14.

Additionally, Stephenson cannot establish that she was subject to an offensive work environment or that she was subjected to severe or pervasive incidents of harassment. None of the alleged incidents are sufficiently severe to create a hostile work environment. *See e.g, Beardson v. Franciscan Alliance Inc.*, 2023 WL 8811124 (N.D. Ind. 2023) (comments including those related to the KKK were insufficient to establish discrimination claim even if bigoted).  Even when taking these allegations together and viewing them in a light most favorable to Stephenson, these allegations, which occurred at various times from June 2019 through March 2020, do not amount to pervasive harassment. Rather, these allegations represent off-handed comments that are not overtly harassing or discriminatory, although perhaps unprofessional in some instances. *See e.g, Moser v. Indiana Dept. of Corrections*, 406 F.3d 895, 902–03 (7th Cir. 2005) (handful of inappropriate comments amounting to "heedless jokes," as opposed to "serious or threatening comments," were insufficient); *Russell v. Bd. of Trustees of Univ. of Ill. at Chicago*, 243 F.3d 336,

343–44 (7th Cir. 2001) (finding insufficient evidence where most of the offensive comments were directed at plaintiff's co-workers); *Adusumilli v. City of Chicago*, 164 F.3d 353, 361–62 (7th Cir. 1998)(finding that a few ambiguous comments among other conduct were not sufficiently severe or pervasive); *McKenzie v. Ill. Dept. of Trans.*, 92 F.3d 473, 480 (7th Cir. 1996) (finding that three comments over a three month period were not frequent or severe enough to rise to the level of unreasonably interfering with plaintiff's work environment);

Additionally, Stephenson cannot establish that the alleged harassment unreasonably interfered with her performance or created an intimidating, hostile or offensive work environment. *Hildebrandt v. Ill. Dept. of Nat. Res.*, 347 F.3d 1014, 1035 (7th Cir. 2003). The alleged conduct may have upset Stephenson, but the undisputed facts establish that it did not "unreasonably interfere" with her work. Indeed, Stephenson received positive evaluations and admits that she generally got along with her colleagues at work. SUF ¶¶ 4-5.

Lastly, there is no basis for employer liability. Under the *Ellerth/Faragher* affirmative defense, an employer is not liable if no tangible employment action was taken against the plaintiff and the employer can establish: (1) they "exercised reasonable care to prevent and correct promptly any ... harassing behavior," and (2) the plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities . . . or to avoid harm otherwise." *Cerros v. Steel Technologies, Inc.*, 398 F.3d 944, 951–52 (7th Cir.2005) (*citing Burlington Industries Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher*, 524 U.S. 775). Here, Stephenson was not subject to any adverse employment action. *See supra*. Further, Stephenson was aware of the District's policies prohibiting discrimination, harassment and retaliation, and she received annual training related to the same. SUF ¶ 7. Stephenson did not complain regarding any perceived discrimination, harassment or retaliation to Human Resources, nor did she or the Union ever file a grievance on

her behalf. SUF ¶ 23, 24. Although Stephenson contends that she complained to Pope and the Union regarding the "uncomfortable" environment at Bottenfield, (SUF ¶ 21) this is insufficient. *EEOC v. Catepillar, Inc.*, 628 F.Supp.2d 844, 874 (N.D. Ill. 2009) (vague allegations are insufficient). Even in considering this fact in a light most favorable to Stephenson, Pope listened to Stephenson's concerns and scheduled a second meeting with Stephenson and Westfield shortly thereafter so that they could discuss and move forward. SUF ¶ 21. Stephenson does not allege any harassing statements occurred after this meeting took place. Such prompt remedial action negates a finding that the District is liable. *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807–08. While this measure may not meet Stephenson's expectations, Title VII only requires employers take steps reasonably likely to stop the harassment. In this case, the undisputed facts establish that such action did so. *Lapka v. Chertoff*, 517 F.3d 974, 984-85 (7th Cir. 2008). For these reasons, the District is entitled to summary judgment.

### D. Stephenson's Retaliation Claim Fails Because She Was Not Subject to Any Adverse Action, Nor Did She Engage In Protected Activity.

To establish a retaliation claim, Stephenson "must present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two. *Robertson v. Dep't of Health Services*, 949 F.3d 371, 378 (7th Cir. 2020). To establish the required causal connection, Stephenson must demonstrate that her protected activity was a "but-for cause" of the challenged employment actions. *Univ. of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 362 (2013). Absent direct evidence, Stephenson must present circumstantial evidence, such as evidence of suspicious timing, ambiguous statements, or treatment different than that afforded similarly-situated employees, from which a reasonable finder of fact could find that the District would not have taken the challenged actions but for Stephenson's protected activity. *Robertson*, 949 F.3d at 379. Stephenson cannot meet this burden.

Stephenson claims that she was retaliated against when Pope spoke to her about a first-grade teaching position. SUF ¶ 25. This is not a "materially adverse action." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("petty slights or minor annoyances," cannot be adverse actions). It is further undisputed that the District did not assign Stephenson to work as a first-grade teacher; rather, she remained in a fifth-grade teaching position in accordance with her preference. SUF ¶ 26. Thus, her reliance on Pope approaching her about her potential interest in teaching first-grade cannot serve as a basis for her claim.

Additionally, Stephenson cannot establish that she engaged in protected activity. Again, Stephenson was aware of the District's policies prohibiting discrimination, harassment and retaliation and received annual training. SUF ¶ 7. Stephenson did not make any reports of discrimination, harassment or retaliation to Human Resources pursuant to those policies and training. SUF ¶ 23. Although Stephenson did approach Pope and her Union about the "uncomfortable" environment at Bottenfield, she did not indicate that she felt she was being targeted based on her race of gender and it is undisputed that the District met with Stephenson regarding her discomfort in an effort to address it and move forward. SUF ¶ 21-22.

Lastly, Stephenson's claim fails because she is unable to establish that her complaints were the but-for cause of any adverse action. There is no evidence of suspicious timing, retaliatory statements or treatment to support an inference of retaliation. *Robertson*, 949 F.3d at 379. Accordingly, Stephenson's retaliation claim must be dismissed.

## CONCLUSION

For the above reasons, Stephenson cannot meet her burden and there are no genuine issues of fact for trial. The District asks this Court to grant its motion for summary judgment on all counts with prejudice, and grant any further appropriate relief including the District's costs and fees.

Dated: July 30, 2024                    Respectfully submitted,

**CHAMPAIGN COMMUNITY SCHOOL
DISTRICT NO. 4, Defendant.**

By: */s/ Caroline K. Kane*
                                             One of Its Attorneys

Sally J. Scott (ARDC #6204350) (sjs@franczek.com)
Caroline K. Kane (ARDC #6324144) (ckk@franczek.com)
Hailey M. Golds (ARDC #6312907) (hmg@franczek.com)
Franczek P.C.
300 South Wacker Drive, Suite 3400
Chicago, IL 60606
(312) 986-0300

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that she caused a true and correct copy of the foregoing **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** to be electronically served upon the parties of record on this 30th day of July, 2024, namely:

> Dawn L. Wall
> Costigan & Wollrab P.C.
> 308 East Washington Street
> Bloomington, IL 61702
> dwall@cwlawoffice.com

*/s/ Caroline K. Kane*