E-FILED
Tuesday, 03 September, 2024  06:09:33 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, URBANA DIVISION

Alyson Stephenson,

          Plaintiff,

v.

Champaign Community Unit School District #4,

          Defendant.

Case No. 23 cv 02081

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

Stephenson does not respond to many of the arguments raised in Defendant's motion and fails to put forth any issue of fact to avoid summary judgment. At times, Stephenson misrepresents record evidence, relies on unsupported conclusory allegations, and otherwise fails to cite to relevant evidence or case law which would preclude summary judgment. The undisputed facts establish that Stephenson's claims fail as a matter of law.

### I.        Response to Plaintiff's Statement of Additional Facts ("Pl. SAF").

1.      Stephenson had a great relationship with Renayee Westfield for four of the five to six years that Stephenson worked at Bottenfield. Ex. A, 22:1-5.

**RESPONSE:** Material and disputed in part. Defendant disputes that Stephenson worked with Westfield for six years, as she worked with her for five years. Plaintiff's Response to Defendant's Statement of Undisputed Facts ("Pl. Resp. to Def. SUF") ¶ 1.

2.      Stephenson reported that Westfield made comments about the KKK, stating that she (Westfield) would not be surprised if those in attendance at the all-staff meeting, including Stephenson, had just walked out of a KKK meeting; but it's none of her business what we do in our free time. Ex. A, 25:17-21.

**RESPONSE:** Material and disputed in part. Defendant disputes that Westfield made more than one comment about the KKK because Stephenson testified that Westfield made a single comment about the KKK to the effect of Westfield would not be surprised if those in attendance at the all-

1

staff meeting, including Stephenson, had just walked out of a KKK meeting, but that their test scores don't reflect that so what they do in their free time is none of her business. Ex. A, 58:20-60:11. Defendant further clarifies that the citation to the record states that Stephenson's report of the statement was to her union representatives. Ex. A, 24:15-25:21.

3.     Stephenson reported that Westfield called Megan Herrig, the first-grade teacher, and asked her to consider moving to fifth grade as a favor to her. Ex. A, 25:22-26:2.

**RESPONSE:** Immaterial and undisputed, with clarification. Defendant asserts that paragraph 3 is immaterial because Stephenson does not dispute that she was not moved from a fifth-grade position to a first-grade position. Ex. A, 25:22-26:4. Defendant does not dispute that Stephenson reported to the Union that Westfield called Megan Herrig, but disputes that she reported this statement to district administration. Ex. A, 25:22-26:4.

4.     Stephenson had paid to have her mother-in-law fly down later to care for her infant daughter. Ex. A, 31:15-17.

**RESPONSE:**  Immaterial and undisputed. Defendant asserts that paragraph 4 is immaterial because it does not support Stephenson's claims of discrimination, hostile work environment or retaliation.

5.     Stephenson reported that she was treated differently from her counterpart Caucasian male teacher, Andy McDaniel, because Westfield had said that he was "white but not too white". Ex. A, 26:3-7, 32:7-9, 39:3-24.

**RESPONSE:** Material and disputed in part. Plaintiff's citation to the record states that Stephenson reported the statement "white but not white" to her union representative; the citation does not support that Plaintiff reported that she was treated differently based on this statement to her Union representatives, nor does the citation support that she reported the statement to administration. Ex. A, 26:3-7, 32:7-9, 39:3-24.

6.     Stephenson went to the union building representatives in the fall of 2019. Ex. A, 26:8-15. In March of 2020, a group of 20 to 25 teachers from Bottenfield went to a meeting with

2

the Union representatives in support of Stephenson; and to discuss the general environment of the building. Ex. A, 26:14-21.

**RESPONSE:** Material and undisputed.

7.    The general tone of the building and the administrators at Bottenfield was that white female teachers could not handle difficult students. Ex A, 33:9-11.

**RESPONSE:** Material and disputed. Defendant disputes that the general tone of the building and the administrators at Bottenfield was that white female teachers could not handle difficult students because this statement is speculative, and Stephenson lacks personal knowledge to offer such testimony.

8.    Stephenson's male counterparts, Andy McDaniel and Nick Ponder, who were both Caucasian male teachers, were treated better than Stephenson by Westfield because Westfield stated that Andy McDaniel and Nick Ponder are the only ones who know how to handle our difficult students. Ex. A, 33:17-23.

**RESPONSE:** Material and disputed. Plaintiff asserts as a fact that Stephenson's male counterparts were treated better than her by Westfield, when Stephenson testified that was her opinion. Defendant disputes that Stephenson testified that she believes that Andy McDaniel and Nick Ponder were treated better than her because Westfield commented that they knew how to handle difficult students. Stephenson testified she believed they were treated differently than her "because they were more vocal and commanding of the room." Ex. A, 34:9-12. Defendant adds that Stephenson testified Westfield never said that Stephenson could not handle difficult students. Ex. A, 38:19-39:2; Pl. Resp. to Def. SUF ¶ 11.

9.    Stephenson felt that the environment at Bottenfield made people feel like being white was a problem. Ex. A, 40:3-9.

**RESPONSE:** Material and disputed. Stephenson testified that Westfield's statement to McDaniel that he was "white but not white" in fall of 2019 made her feel as if being white is a problem. Ex. A, 40:3-9.

3

10.     Reneyee Westfield took the attention away from a meeting about behavior issues with three students and the Check-In/Check-out program to stand up and read an article to Stephenson about how a picture of three students who were standing on different sized boxes to try and look over a fence was an example of white supremacy. Renayee Westfield read the entire article word for word aloud to Stephenson, directing it toward Stephenson. Ex. A, 44:23-45:12.

**RESPONSE:** Material and disputed in part. Defendant does not dispute that during a committee meeting to discuss behavioral interventions for three students, and the Check-In / Check-Out program, Westfield read out loud from an article relating to a picture depicting equality versus equity and that the article indicated that the picture was an example of white supremacy. Ex. A, 43:19-45:16, 71:21-73:18. Defendant does not dispute that the picture depicted three students who were standing on different sized boxes to try and look over the fence. Defendant does not dispute that Westfield did so in front of others, including Stephenson, but disputes that it was directed toward Stephenson because others were present at the meeting and Westfield never stated that Stephenson, or anyone, was a white supremacist. Ex. A, 73:17-18.

11.     Several people came up to Stephenson after the meeting where Renayee Westfield read the article to Stephenson and said to Stephenson how uncomfortable it was and inappropriate and they apologized that it had happened to Stephenson. Ex. A, 45:13-16.

**RESPONSE:**  Material and disputed in part. Defendant does not dispute that Stephenson testified that several people came up to her after the meeting and stated how uncomfortable it was and inappropriate and that they apologized that it happened to Stephenson. However, Defendant asserts that it is undisputed that Westfield never stated that Stephenson, or anyone, was a white supremacist. Ex. A, 73:17-18; Pl. Resp. to Def. SUF ¶ 18.

12.     Stephenson was the only white female teacher traveling from Champaign to Dallas for the AVID conference with the other black female administrators; and she was clearly left behind by the other black female administrators who made transportation arrangements to the hotel from the airport, which was a forty-minute drive. Ex. A, 35:1-5, 36:2-5. The other teachers and an instructional coach from Bottenfield who were also attending the meeting flew from Bloomington to Dallas and arrived before Stephenson's flight arrived from Champaign to Dallas. Ex. A, 35:8-23. Stephenson did not arrange the travel. Ex. A, 35:10-11.

4

**RESPONSE:**  Material and disputed in part. Defendant disputes that Stephenson was clearly left behind because Stephenson admits that the other administrators and teachers were expected to arrange their own travel and did so. Ex. A, 35:6-37:1; Dep Ex. 4.

13.    Stephenson had a meeting with Jason Pope and Renayee Westfield regarding a student behavior issue. After the meeting, Westfield pulled Stephenson into her office for a one-on-one discussion and said "I just want you to know I think I know who is sending those e- mails." Ex. A, 41:1-24. Prior to this meeting, Stephenson and two other teachers had received anonymous e-mails from someone posing as a student. Ex. A, 41:6-15. Renayee Westfield told Stephenson that Westfield thought she knew who was sending the e-mails; and Westfield said "It's a staff member, and you need to distance yourself." She also said "You need to watch who you're associating with." Ex. A,41:20-24-42:1. Westfield would not tell Stephenson who it was or how she knew. Ex. A, 42:1-7.

**RESPONSE:** Immaterial and undisputed. Defendant asserts that paragraph 13 is immaterial because it does not support Stephenson's claims of discrimination, hostile work environment or retaliation and Stephenson failed to articulate how this incident was discriminatory or harassing based on her race or gender.  Ex. A, 43:8-43:18.

14.    Stephenson felt harassed by Westfield because Westfield was telling her she knew something and then telling her to watch who she associated with; and Stephenson was not sure if that was meant to not associate with males or females or what. Ex. A, 42:10-22-43:11-14.

**RESPONSE:**  Immaterial and undisputed. Defendant asserts that paragraph 14 is immaterial because it does not support Stephenson's claims of discrimination, hostile work environment or retaliation and Stephenson failed to articulate how this incident was discriminatory or harassing based on her race or gender.  Ex. A, 43:8-43:18.

15.    Stephenson went to Jason Pope and told him that it's a very uncomfortable and hostile work environment to be in and she wanted a meeting. Ex. A, 47:5-7. Stephenson's teaching partner, Kerri Schmidt went with Stephenson to a meeting with Jason Pope and Orlando Thomas. Ex. A, 47:10-12. At that meeting, Kerri and Stephenson were attempting to address their complaints about hostile work environment and Jason Pope said they were not going to discuss those concerns; but would only discuss a strategy for moving forward. Ex. A, 47:12-16.

**RESPONSE:**  Material and disputed in part. Defendant disputes that Kerry Schmitt was attempting to address her complaints about a hostile work environment because this statement is

speculative, hearsay, and Stephenson lacks personal knowledge to offer such testimony. Defendant

disputes that Pope said they were not going to discuss those concerns because, in Plaintiff's SAF

No. 16, Stephenson admits they discussed the issues she raised. Ex. A, 53:19-54:22; Pl. Resp. to

Def. SUF ¶ 21.

16. One issue discussed at the meeting with Jason Pope and Orlando Thomas was Westfield had pulled a student out of Stephenson's classroom. Westfield was having lunch with them and going on walks with them; and at one point Westfield asked one of Stephenson's students if she was uncomfortable being a black student in Stephenson's classroom. Ex. A, 47:17-24-48:1. As a result of Westfield pulling Stephenson's students out to talk to them, Stephenson told Jason Pope that if Westfield was going to pull a student out to talk to them, Stephenson wanted another adult present because of the nature of the conversation Westfield was having with students. Ex. A, 48:2-9.

**RESPONSE:** Material and undisputed.

17. Stephenson and Kerri Schmidt also had a meeting with just Jason Pope. Stephenson told Jason Pope that Bottenfield was a very uncomfortable place to work and that we needed to find a solution because it was not sustainable. Ex. A, 50:11-22.

**RESPONSE:** Material and undisputed.

18. Jason Pope was aware of the things that had happened previously with the airport, the KKK comment made at the staff meeting to the white supremacy article being read out at Stephenson; and Westfield refusing to help in Stephenson's classroom. Ex. A, 51:1-8. Stephenson told Jason Pope that the environment was toxic and unbearable. Ex. A, 51:7-8. Ann Ramirez, a union representative was also at the meeting and she was taking notes. Ex. A, 52:8-10. Stephenson received a copy of the notes of the meeting shortly after the meeting. Ex. A, 52:14-19.

**RESPONSE:** Material and disputed in part. Defendant disputes that Jason Pope was aware of the

airport incident and the white supremacy article because such assertion is speculative and

Stephenson lacks knowledge to offer such testimony. Defendant does not dispute that Pope was

aware of the KKK comment, however, Stephenson's citation does not support this assertion.

Defendant does not dispute that Pope knew about Westfield sending the school nurse to respond

to Stephenson's request for assistance in her classroom; however, Plaintiff's citation does not

support her claim that Westfield "refused" to respond to Stephenson's request. Ex. A, 47:4-49:11.

6

Defendant does not dispute that Stephenson told Pope that the environment was toxic and unbearable. Defendant does not dispute that Ann Ramriez, a union representative was also present at the meeting and took notes or that Stephenson received a copy of these notes, but asserts that such notes are inadmissible and hearsay under Fed. R. Civ. P. 56(c)(2).

19.     Kerri, Jason Pope and Ann Ramirez were having a meeting and then Stephenson joined a short time later. Ex. A, 53:3-6. The notes of the March 6, 2020 meeting taken by Ann Ramirez, referenced as Dep. Ex. #9, accurately reflect what happened at the meeting. Ex. A, 53:12-17, Plf.Ex.4, which is a copy of the notes taken at the March 6, 2020 meeting.

**RESPONSE:**  Material and disputed in part. Defendant does not dispute that Ann Ramirez took notes of this meeting that occurred on March 6, 2020, but asserts that such notes are inadmissible and hearsay under Fed. R. of Civ. P. 56(c)(2).

20.     The meeting with Kerri, Stephenson, Jason Pope and Orlando Thomas occurred a after the March 6, 2020 meeting. Ex. A, 53:24-54:1-5. At that meeting, Jason Pope did most of the talking and just said he knows that Kerri and Stephenson have expressed concerns about the environment and how they had been treated and some of the specific incidents; but that he was just going to discuss ways to move forward. Ex. A, 54:15-22. Notes were taken at the meeting by one of the union representatives and Stephenson received a copy of the notes shortly after the meeting. Ex. A, 55:10-24-56:1-5. Stephenson stated that Dep. Ex. 10 accurately reflected what was discussed at the meeting. Ex. A, 56:12-17, Plf. Ex.5, which is a copy of the notes of the March 10, 2020 meeting.

**RESPONSE:** Material and disputed in part. Defendant does not dispute that notes were taken at the meeting by one of the union representatives and that Stephenson received a copy of the notes shortly after the meeting, but asserts that such notes are inadmissible and hearsay under Fed. R. of Civ. P. 56(c)(2).

21.     Stephenson felt that it was totally inappropriate for Westfield to have said that someone, particularly a white person, is part of the KKK or make that assumption especially in a public-school building. Ex. A, 59:22-24-60:1.

**RESPONSE:**  Material and undisputed.

22.     In January of 2020, Jason Pope did not introduce a new staff person to Stephenson. Jason Pope skipped over Stephenson twice while making introductions to other staff near Stephenson; but did not introduce the new staff person to Stephenson. Ex. A, 60:17-24- 61:1-14.

**RESPONSE:**  Material and undisputed.

23.     Towards the end of the school year in probably May of 2020, Stephenson received a call from a first-grade teacher, Megan Herrig, who said that she had received a call from Renayee Westfield asking Megan to take Stephenson's spot as a fifth-grade teacher as a favor to Renayee Westfield. Ex. A, 64:7-13 65:23-24-66:1-4. Jason Pope sent an e-mail to Stephenson suggesting that it was Megan who wanted to move to fifth grade and asking Stephenson to consider moving to first-grade. Ex. A, 64:14-19.

**RESPONSE:** Immaterial and disputed in part. Defendant asserts that paragraph 23 is immaterial because it is undisputed that Stephenson was not moved from the fifth-grade teaching position to a first-grade teaching position. Ex. A, 70:1-71:11; Dep. Ex. 11; Pl. Resp. to Def. SUF ¶ 26. Defendant does not dispute that towards the end of the school year, Jason Pope contacted Stephenson suggesting that Megan Herrig wanted to move to a fifth-grade teaching position and asked Stephenson if she would move to a first-grade teaching position. Defendant otherwise disputes the statements within paragraph 23 as inadmissible and hearsay under Fed. R. of Civ. P. 56(c)(2).

24.     After the decision was communicated to the first-grade team, including Megan, that they would be teaching first grade; Jason Pope continued to pursue Stephenson about the first-grade position and why she did not want to move to first grade; and Jason's actions made Stephenson feel uncomfortable like he was setting her up to fail. Ex. A, 65:14-20. Stephenson felt that the request for her to move to first-grade was with ill intentions; and the fact that Renayee had asked Megan to take Stephenson's spot as a favor to Renayee made Stephenson feel it was not in Stephenson's or the students' best interest. Ex. A, 68:1-6, 69:3-13.

**RESPONSE:**  Immaterial and disputed in part. Defendant asserts that paragraph 24 is immaterial because it is undisputed that Stephenson was not moved from the fifth-grade teaching position to a first-grade teaching position. Ex. A, 70:1-71:11; Dep. Ex. 11; Pl. Resp. to Def. SUF ¶ 26. Defendant disputes that Westfield asked Megan to take Stephenson's spot as a favor to Westfield because such assertion is inadmissible and hearsay under Fed. R. of Civ. P. 56(c)(2).

25.     Stephenson resigned from her position as a teacher with the District because of all of the incidents that happened to me and the environment that I was in and the uncertainty and

8

the unknown and the completely unprofessional and unacceptable environment that anyone shouldn't ever have to endure. Ex. A, 70:3-8, 82:16-18.

**RESPONSE:** Material and disputed in part. Defendant disputes that Stephenson resigned from her position for the reasons stated within paragraph 25 because it is undisputed that Stephenson voluntarily resigned because she was offered a second-grade teaching position she applied for at Little Hearts and Hands. Ex. A, 82:19-83:10; Dep Ex. 14; Pl. Resp. to Def. SUF ¶ 29-30.

26.     Stephenson felt that Jason Pope and Renayee Westfield subjected Stephenson to a hostile and harassing environment. Stephenson stated that it was the repetitive nature and the persistence that made it so terrible; and the fact that in many instances it was targeted at her. Ex. A, 74:11-18, 75:2-8.

**RESPONSE:** Material and undisputed, with clarification. Defendant does not dispute that Stephenson felt that Pope and Westfield subjected her to a hostile and harassing environment based on the repetitive and persistent nature of the alleged conduct, and that she believes that many instances were targeted her; however Defendant denies that the evidence establishes that such instances were in fact targeted at her or created a hostile and harassing environment.

27.     Stephenson felt that Jason Pope and Renayee Westfield were retaliating against her when they tried to get Megan to take Stephenson's spot in fifth grade. Ex. A, 76:23-24=77:1-5. Stephenson felt that they were retaliating against her because she had gone to administration several times; and that she had gone to the union and had a lot of staff support. Ex. A, 77:8-19.

**RESPONSE:** Immaterial and disputed in part. Defendant asserts that paragraph 27 is immaterial because it is undisputed that Stephenson was not moved from the fifth-grade teaching position to a first-grade teaching position. Ex. A, 70:1-71:11; Dep. Ex. 11; Pl. Resp. to Def. SUF ¶ 26. Defendant disputes that Stephenson went to administration several times because the record does not support this contention and the record does not support that the administration knew Stephenson went to the Union regarding her concerns. Ex. A, 27:12-19. Defendant disputes that Stephenson had a lot of staff support because this statement is speculative and Stephenson lacks personal knowledge to offer such testimony. Defendant further disputes that Pope or Westfield

tried to get Megan to take Stephenson's spot in fifth grade because the record does not support this contention and such assertion is speculative and based on inadmissible hearsay pursuant to Fed. R. Civ. P. 56(c)(2).

28.     Stephenson did submit a complaint of harassment and discrimination and retaliation to Jason Pope. Ex. A, 81:2-6.

**RESPONSE:**   Material and disputed in part. It is undisputed that Plaintiff raised concerns regarding an uncomfortable environment; however the record does not establish that Stephenson submitted a complaint of harassment, discrimination and retaliation. Ex. A, 50:4- 52:2, 53:19-54:22; Pl. Resp. Def. SUF ¶ 21, 22.

29.     During the time that Renayee Westfield served as the assistant principal under Jason Pope, Westfield was Stephenson's supervisor and evaluator. Westfield would conduct both formal and informal observations of Stephenson during the school year. Plf. Ex. 1, which is the Dep. Transcript of Renayee Westfield (hereafter referred to as "Plf. Ex. 1"). Plf. Ex. 1, 8:5-13.

**RESPONSE:**  Material and undisputed.

30.     During a staff meeting where all staff members at Bottenfield were present, Westfield made a reference to the Ku Klux Klan. Jason Pope was also in attendance at this meeting. Plf. Ex.1, 20:22-25, 21:11-25-22:1.

**RESPONSE:**  Material and undisputed.

31.     Westfield read excerpts from three articles during the Tier 2 committee meeting attended by Stephenson. Westfield read from an article titled "Sippin the EquiTEA". Plf. Ex.1, 35:15-13, 36:8-10, 68:6-20. Westfield did state that the "Sippin the EquiTEA" article did reference white supremacy. Plf. Ex. 1, 71:15-18. Plf. Ex.3, which is a copy of the article titled "Sippin the EquiTEA".

**RESPONSE:**   Material and disputed in part. Defendant does not dispute the statements within paragraph 31; however, Defendant objects to Plaintiff's Exhibit 3 because it is inadmissible under Fed. R. of Civ. P. 56(c)(2). Plaintiff Exhibit 3 is incomplete and there is no sworn testimony establishing that this is the article to which Westfield or Stephenson referenced.

10

32.    At a meeting on November 4, 2019, a statement was made by Renayee Westfield that our teaching evaluation model is "white streamed". Def. Ex. B, which are the sworn Interrogatory Responses of Stephenson, pg.9.

RESPONSE:  Immaterial and disputed. Defendant asserts that paragraph 32 is immaterial because this fact does not support Stephenson's claims for discrimination, a hostile work environment or retaliation. Defendant does not dispute that Plaintiff asserted in her Interrogatory responses that that at a meeting on November 4, 2019, Westfield made a statement that the teaching model is "white streamed," however, Stephenson failed to offer any evidence supporting this statement or allege facts to indicate that such statement was discriminatory against her.

33.    At the end of a committee meeting on November 11, 2019, Renayye Westfield said directly to Stephenson "I'm going to tell you one more thing. With all of this union stuff going on do with it what you want, but I suggest you start separating yourself from your teammates." Ex. B, pg.9.

RESPONSE:   Immaterial and undisputed. Defendant asserts that paragraph 33 is immaterial because it does not support Stephenson's claims of discrimination, hostile work environment or retaliation and Stephenson failed to articulate how this incident was discriminatory or harassing based on her race or gender.  Ex. A, 43:8-43:18.

34.    Renayee Westfield had talked to three of Stephenson's students. And in that meeting those three students mentioned that they felt that Stephenson was racist. Westfield said in Stephenson's defense they also said that about the other two fifth grade teachers. Plf. Ex.1, 53:12-25, 56:13-17. As soon as the students mentioned that, Westfield called Jason Pope into the meeting. Westfield stated it was that meeting that made Stephenson feel that Westfield was talking with Stephenson's students about her (Stephenson) being a racist. Plf. Ex. 1, 54:1-8.

RESPONSE:   Immaterial and undisputed. Defendant asserts that paragraph 34 is immaterial because it does not support Stephenson's claims of discrimination, hostile work environment or retaliation and Stephenson fails to articulate how this alleged incident was discriminatory against her based on her race or gender.

11

35.    Westfield stated that she was the only black certified staff person at Bottenfield, and conversations on race were hard to have as an administrator and as equity AP for the District. Plf. Ex. 1, 57:20-23, 58:1-4.

**RESPONSE:**  Material and undisputed.

36.    Westfield knew prior to leaving the Dallas airport in her van that Stephenson's mother-in-law had not shown up. Plf. Ex.1, 86:13-20.

**RESPONSE:**  Immaterial and undisputed. Defendant asserts that paragraph 36 is immaterial

because it does not support Stephenson's claims of discrimination, hostile work environment or

retaliation.

37.    Jason Pope asked Renayee Westfield to have a conversation with the first-grade teacher that did not get the third-grade position to move to fifth grade. Plf. Ex. 1, 157:11-18. Westfield asked Megan Herrig if she would be comfortable moving to fifth grade. Plf. Ex. 1, 158:1-9. Westfield stated that it was Jason Pope's intention to move Stephenson from fifth grade to first grade. Plf. Ex. 1, 158:14-25-159:1.

**RESPONSE:**  Immaterial and undisputed. Defendant asserts that paragraph 37 is immaterial

because it is undisputed that Stephenson was not moved from the fifth-grade teaching position to

a first-grade teaching position. Ex. A, 70:1-71:11; Dep. Ex. 11; Pl. Resp. to Def. SUF ¶ 26.

38.    Stephenson told Jason Pope that she wanted another adult present when her students were talked to or were having lunch with an adult due to Stephenson's lack of trust with the administration. Plf. Ex. 6, which is the Deposition of Jason Pope, 68:7-14.

**RESPONSE:**  Immaterial and undisputed.  Defendant asserts that paragraph 38 is immaterial

because it does not support Stephenson's claim for discrimination, harassment or retaliation.

39.    Jason Pope had a coaching conversation with Renayee Westfield following the meeting where Westfield made the KKK comment. Plf. Ex. 6, 102:15-24-103:1-3.

**RESPONSE:**  Material and undisputed.

40.    The District General Personnel Nondiscrimination policy provides in pertinent part the following:

It shall be the policy of the Board of Education of this District to prohibit Discrimination against any employee on account of race, color, creed, religion, national, ancestry, sex, age, marital status, physical or mental handicap unrelated To ability, or unfavorable discharge

12

from the military. Plf. Ex. 2, pg. 1, which is a copy of the District General Personnel - Nondiscrimination policy produced by the District in its Initial Disclosures bate-stamped CCSD 4 000050.

**RESPONSE:**  Material and undisputed; however, Defendant asserts that the above does not fully

quote the policy.

41.    The District General Personnel Nondiscrimination policy further provides the following:

Any employee who believes he/she has been discriminated against by any supervisor, co-worker, or non-employee should immediately notify his/her supervisor, or if the supervisor is alleged to have discriminated, the next immediate supervisor may be notified. Plf. Ex. 2, pg.1, which is a copy of the District General Personnel -Nondiscrimination policy produced by the District in its Initial Disclosures bate-stamped CCSD 4 000050.

**RESPONSE:**  Material and undisputed; however, Defendant asserts that the above does not fully

quote the policy.

42.    The District General Personnel -Workplace Harassment Prohibited policy provides:

Whom to Contact with a Report or Complaint

An employee should report claims of harassment to any of the following: his/her immediate supervisor, the Building Principal, an administrator, or the Executive Director of Human Resources…. Plf. Ex. 2, pg.3, which is a copy of the District General Personnel – Workplace Harassment Prohibited policy produced by the District in its Initial Disclosures bate-stamped CCSD 4 000063.

**RESPONSE:**  Material and undisputed; however, Defendant asserts that the above does not fully

quote the policy.

43.    Jason Pope did not recall initiating an investigation regarding complaints by Ms. Schmitt or Stephenson with regard to claims of hostile work environment. Plf. Ex. 6, 66:1-11.

**RESPONSE:**  Immaterial and undisputed. Defendant asserts that paragraph 43 is immaterial

because the undisputed facts establish that Pope held multiple meetings in which he discussed

Stephenson's and Schmitt's concerns. Ex. A, 50:4-52:2, 53:19-54:22.

44.     Stephenson, Kerri Schmitt, Ann Ramirez and Jason Pope attended a meeting on March 6, 2020. The meeting notes taken by Ann Ramirez accurately reflect what was discussed during that meeting with respect to the notes recorded at and after Stephenson's arrival at the meeting. Plf. Ex. 4, which is a copy of Dep. Ex. 9 in Ex. A, 52:3-16, 52:23-24-53:1-6.

**RESPONSE:**     Material and disputed in part. Defendant disputes that the purported notes accurately reflect what was discussed during the meeting because Stephenson has failed to cite to admissible evidence to establish the same and because the notes are inadmissible hearsay. Fed. R. Civ. P. 56(c)(2).

## II.     ARGUMENT

### A. Stephenson's Failed to Comply with Federal Rule 56 and She Cannot Establish That There Is an Issue of Material Fact to Preclude Summary Judgment.

Throughout her Response and her Statement of Additional Facts, Stephenson makes assertions that are unsupported by admissible evidence and contain hearsay. Pl. SAF ¶¶ 5, 15, 18-20, 23-24, 27-28, 31-32, 44. Stephenson also relies on her own speculative testimony in which she is not competent to testify because she lacks personal knowledge. Pl. SAF ¶¶ 7, 15, 18, 27. This is impermissible and such assertions should be disregarded. Fed. R. Civ. P. 56(c), 56(e)(2); *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 585 (7th Cir. 2021); *Vanasco v. Nat'l–Louis Univ.,* 137 F.3d 962, 965-66 (7th Cir. 1998); *Winkelman v. Magne,* 173 F.Supp.2d 821, 826 (C.D. Ill. 2001).

### B. Stephenson Fails To Provide Any Support for Her Gender Discrimination Claim And Her Reverse Race Discrimination Claim Fails.

Stephenson focuses on her reverse race discrimination claim and fails to put forth any argument or issue of fact in support of her gender discrimination claim. Thus, she has abandoned her claim and any argument in opposition to Defendant's motion is waived. *Jorden v. Walmart Stores, Inc.*, 332 F.Supp.2d 1172, 1177 (C.D. Ill. 2004); *Hudgens v. Wexler & Wexler*, 391 F. Supp. 2d 634, 647 (N.D. Ill. 2005); *De v. City of Chicago*, 912 F.Supp.2d 709 (N.D. Ill. 2012).

In support of her reverse race discrimination claim, Stephenson asserts that she has established "fishy" circumstances to indicate that the District discriminated against white employees. Pl. Resp. at 17-18. She relies solely on the various comments and actions of Westfield and asserts that these allegations are sufficient. Her claim fails because 1.) the fact that Westfield is African American is not sufficient to establish fishy circumstances as a matter of law, and 2.) even when taking each allegedly discriminatory statement together and in a light favorable to Stephenson, she cannot establish she was discriminated against.

First, the fact that Westfield is African American is insufficient to establish a "fishy circumstance," as a matter of law. *Lupescu v. Napolitano*, 700 F.Supp.2d 962, 974 (N.D. Ill. 2010). Second, the law esetablishes that "fishy" circumstances may exist where plaintiffs present evidence of schemes to fix performance ratings to their detriment, that the hiring establishes that the hiring system seemed rigged against them because it departed from usual procedures in an "unprecedented fashion," or that they were passed over despite superior qualifications. *Mills v. Health Care Service Corp.*, 171 F.3d 450, 456 (7th Cir. 1999) (citing *Harding v. Gray*, 9 F.3d 150, 152-54 (D.C. Cir. 1993).* No such circumstances exist in this case, and, in fact, the undisputed facts establish the opposite. At all times, Stephenson was assigned to be a fifth-grade teacher, in accordance with her preference. Pl. Resp. to Def. SUF ¶ 2. She received positive performance reviews, including those completed by Westfield and Pope. *Id*. at ¶ 5. Further, she was never disciplined and she voluntarily resigned when she received an offer for another job. *Id*. at ¶¶ 6, 30, 31. Stephenson also admits that she had a great relationship with Westfield for four of the five years she worked with her. Pl. SAF ¶ 1. This fact weighs against any finding of a "fishy" circumstance. It simply does not follow that Stephenson and Westfield had a great relationship for years and then didn't based on race. Additionally, Stephenson cannot establish that similarly

situated non-class members were treated more favorably, nor does she assert any argument to indicate otherwise. Pl. Resp. to Def. SUF ¶¶ 16-17, 9-10, 15, 28. Lastly, while Stephenson does not dispute that she was not subject to any adverse job action (Pl. Resp. to Def. SUF ¶¶ 2, 5, 6, 26, 30, 31), she argues that the hostile work environment itself is the adverse action for which she seeks to recover. Pl. Resp. at 20-21. For the reasons set forth below, Stephenson's hostile work environment claim fails, and thus, cannot serve as an adverse employment action for the purposes of her discrimination claim.

### C.  Plaintiff's Hostile Work Environment Claim Fails.

Again, Stephenson relies on various comments of Westfield to establish that she was subjected to a hostile work environment and claims that the District is liable because Pope failed to prevent the allegedly continued actions of Westfield. Pl. Resp. Br. 20-21. Stephenson does not dispute that any comments that were arguably related to race or gender were either not directed at her or were in the context of discussing student issues. Pl. Resp. at Def. SUF ¶¶ 11, 12, 15, 14, 18. The law establishes that a handful of inappropriate comments do not give rise to a claim. Stephenson fails to address this argument in her brief or distinguish the case law cited by Defendant. *See e.g, Moser. V. Indiana Dept. of Corrections,* 406 F.3d 895, 902-03 (7th Cir. 2005); *Russell v. Bd. of Trustees of Univ. of Ill. At Chicago,* 243 F.3d 336, 343-344 (7th Cir. 2001).

The undisputed facts further establish that Pope ended any alleged harassing conduct by Westfield. Pl. Resp. at 21. Pope immediately had a coaching conversation with Westfield after the KKK comment. Pl. SAF ¶ 39. Once Stephenson met with Pope on March 6, 2020 and again on March 10, 2020, to discuss her concerns related to Westfield, they discussed those concerns and how to move forward. Pl. Resp. to Def. SUF ¶ 21. Stephenson does not cite any allegedly discriminatory or harassing conduct that occurred after this meeting. The undisputed facts establish

16

that the District took reasonable steps to stop any perceived harassment and such steps worked in this case. *Lapka v. Chertoff*, 517 F.3d 974, 984-85 (7th Cir. 2008). Summary judgment is proper.

### D.  Stephenson's Retaliation Claim Fails.

Stephenson did not make any reports of discrimination, harassment or retaliation to Human Resources. Pl. Resp. Def. SUF. ¶ 7. However, Stephenson claims that she was not required to, (Pl. Resp. 21-22), and that she brought her complaints regarding Westfield to Pope in March of 2020. Pl. Resp. at 21. There are no facts in the record to establish that Stephenson complained of discrimination, harassment and retaliation during these March 2020 meetings with Pope. Instead, they establish that Stephenson raised concerns regarding the "uncomfortable" environment. Pl. Resp. to Def. SUF. ¶¶ 21-22. Because Stephenson indicated that she was "uncomfortable," and failed to indicate that she felt she was being targeted based on her race or gender, her purported complaint is insufficient. *See*, *EEOC v. Catepillar, Inc.*, 628 F.Supp.2d 844, 874 (N.D. Ill. 2009) (vague allegations are insufficient); *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 850-51 (7th Cir. 2008)(While reporting discrimination to a supervisor may be protected activity, the report must include a complaint of discrimination or sufficient facts to raise that inference); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) ("merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference is insufficient"); *see also*, *Sanford v. Comcast Cable Commc'ns Mgmt., LLC*, 2019 WL 3555027, at *4 (N.D. Ill. Aug. 5, 2019) (plaintiff did not engage in protected activity where he merely alleged that he was "uncomfortable," and even if he had used the term "discrimination," he failed to refer to discrimination based on his age or race).

Furthermore, even in viewing this fact in a light most favorable to Stephenson, the fact that Pope took immediate action and met with Stephenson, Westfield and others to address and resolve

17

any concerns precludes Stephenson's claim. Pl. Resp. to Def. SUF ¶ 21; *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807–08 (1998). Additionally, the fact that any purported complaint Stephenson did raise regarding the actions of Westfield was resolved warrants summary judgment. *See Lapka*, 517 F.3d at 984-85.

Stephenson argues that Pope retaliated against her for her purported complaint against Westfield by asking her if she was interested in moving to a first-grade position. Pl. Resp. at 22-23. Merely asking Stephenson about her interest in switching to the first-grade position is not an adverse action; there is no "real harm." *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 902 (7th Cir.2003); *Brown v. Advocate South Suburban Hosp.*, 700 F.3d 1101, 1107 (2012); *Hottenroth v. Slinger,* 388 F.3d 1015, 1030 (7th Cir.2004) (unfulfilled threats are not adverse employment actions). Stephenson communicated her preference for fifth grade, and she was assigned to fifth grade. Pl. Resp. to Def. SUF ¶¶ 25-26. Thus, Stephenson has failed to cite any adverse action.[1] Additionally, there are no facts to support that Pope would have any motive to retaliate against Stephenson based on the purported complaint against Westfield. Pl. Resp. at 23; *Brown, 700 F.3d at 1107-08* (dismissing plaintiff's retaliation claim because plaintiff failed to put forth enough evidence to show retaliatory animus)(*citing Cook v. IPC Int'l Corp*, 673 F.3d 625, 628 (7th Cir.2012)* (the "cat's paw" theory refers to a situation in which an employee is subject to an adverse action by a supervisor who himself has no discriminatory motive, but who has been manipulated by a subordinate who does have such a motive). Pope took action to resolve the "uncomfortable"

---

[1] To the extent Stephenson is again relying on her alleged hostile work environment claim to establish an adverse action for her retaliation claim, case law establishes that she cannot do so. *See Jones v. Res-Care, Inc.*, 613 F.3d 665, 671 (7th Cir. 2010) ("[a] plaintiff's subjective determination of tension in the workplace, without more, cannot constitute an adverse employment action absent a tangible job consequence."); *Ross v. UChicago Argonne, LLC*, 2020 WL 2041338, *10 (N.D. Ill. 2020).

18

environment and any perceived hostility that Stephenson brought forward. Pl. Resp. to Def. SUF ¶ 21. Thus, summary judgment is proper.

### III.   Conclusion

For the foregoing reasons and the reasons stated in the Defendant's Motion for Summary Judgment, there are no genuine issues of material fact for trial. The undisputed facts establish that Stephenson cannot succeed on her claims. Therefore, the District is entitled to summary judgment.

Dated: September 3, 2024                    Respectfully submitted,

**CHAMPAIGN COMMUNITY SCHOOL DISTRICT NO. 4, Defendant.**

By: */s/ Caroline K. Kane*
                              One of Its Attorneys

Sally J. Scott (ARDC #6204350) (sjs@franczek.com)
Caroline K. Kane (ARDC #6324144) (ckk@franczek.com)
Hailey M. Golds (ARDC #6312907) (hmg@franczek.com)
Franczek P.C.
300 South Wacker Drive, Suite 3400
Chicago, IL 60606
(312) 986-0300

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that she caused a true and correct copy of the foregoing **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** to be electronically served upon the parties of record on this 3rd day of September, 2024, namely:

> Dawn L. Wall
> Costigan & Wollrab P.C.
> 308 East Washington Street
> Bloomington, IL 61702
> dwall@cwlawoffice.com

*/s/ Caroline K. Kane*